UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **TROY E. ROBB,** | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) ) Case No. 1:24-cv-00253-ALT |
| **COMMISSIONER OF SOCIAL SECURITY**, *sued as Frank Bisignano*,[1] *Commissioner*, | ) ) ) ) ) |
| **Defendant.** | ) ) ) |

**OPINION AND ORDER**

Plaintiff Troy E. Robb appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI"). (ECF 1).[2] For the following reasons, the Commissioner's decision will be AFFIRMED.

**I. FACTUAL AND PROCEDURAL HISTORY**

Robb applied for SSI in December 2021, alleging disability as of May 15, 2020. (ECF 9 Administrative Record ("AR") 165-173; *see* AR 174, 177-183).[3] Robb's claim was denied initially and upon reconsideration. (AR 83-84, 91-92). On July 7, 2023, administrative law judge

---

[1] Frank Bisignano became the Commissioner of Social Security in May 2025, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for his predecessor as the defendant in this suit. *See La'Toya R. v. Bisignano*, No. 1:24-cv-01564-JMS-TAB, 2025 WL 1413807, at n.2 (S.D. Ind. May 15, 2025).

[2] The parties have consented to the exercise of jurisdiction by a Magistrate Judge. (ECF 10, 13).

[3] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

("ALJ") Meredith Jacques conducted an administrative hearing at which Robb, his representative,[4]—and a vocational expert, testified. (AR 38-64). On August 28, 2023, the ALJ rendered an unfavorable decision to Robb, concluding that he was not disabled because, despite the limitations caused by his impairments, he could perform his past relevant work as a car cleaner as well as other unskilled jobs that exist in significant numbers in the national economy. (AR 21-31). The Appeals Council denied Robb's request for review on April 18, 2024 (AR 5-7), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

Robb filed a complaint with this Court on June 22, 2024, seeking relief from the Commissioner's decision. (ECF 1). Robb's primary argument in support of a remand is that the ALJ failed to fairly and accurately assess his memory impairments. (ECF 19 at 11-25). More specifically, Robb argues that the ALJ should have included limitations in the residual functional capacity ("RFC") to account for the frequency of his memory lapses, the effect a memory lapse would have on his workplace, the best way to present information so he recalls it, and the repetitiveness of the work tasks. (*Id*. at 13).

At the time of the ALJ's August 28, 2023, decision, Robb was 60 years old, had at least a high school education, and had past relevant work as a car cleaner. (AR 29). In his application, Robb alleged disability due to a 1970 cement truck accident, along with a 1980 train collision. (AR 166).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

---

[4] Robb was represented at the hearing by Tara Budd, an accredited disability representative associated with his counsel's law firm. (AR 21, 153, 161).

Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation and quotation marks omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, [the Court] must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. Analysis

*A. The Law*

Under the Act, a claimant seeking SSI must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see id*. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is incapable of performing his past relevant work, and (5) whether he is incapable of performing any work in the national economy. *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 416.920.[5] "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

In the ALJ's August 28, 2023, decision, which became the final decision of the Commissioner, the ALJ observed at step one of the five-step analysis, that Robb did not engage in substantial gainful activity since his application date of December 16, 2021. (AR 23). At step two, the ALJ found that Robb had the following severe impairments: generalized anxiety disorder, depressive disorder, and closed head injury. (*Id*.). At step three, the ALJ concluded that

---

[5] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks he can do despite his limitations. 20 C.F.R §§ 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id*. § 416.920(e).

4

Robb did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 24).

The ALJ assigned Robb the following RFC:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations: He can understand, remember, and carry out simple instructions, and use judgment to make simple work-related decisions. He cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. He can deal with occasional changes in a routine work-setting, and he can frequently interact with coworkers, supervisors, and the general public.

(AR 25).

The ALJ determined at step four that, given the foregoing RFC, Robb could perform his past relevant work as a car cleaner as actually and generally performed. (AR 29). Further, at step-five, the ALJ concluded that given Robb's age, education, work experience, and RFC, he could also perform a significant number of unskilled jobs in the national economy, including, a hand packer, prep cook, and floor cleaner. (AR 30). Therefore, Robb's application for SSI was denied. (AR 31).

*C. Mental RFC*

Robb argues that the ALJ failed to build a logical connection between the RFC limitation related to his memory and the evidence of his memory lapses and impairments. (ECF 19 at 11). Crucial to Robb's argument is his attestation to a severe impairment of a closed head injury. (*Id*. at 12; *see* AR 26).[6] In support of his memory issues, Robb notes his testimony to the ALJ during the hearing, including, his difficulty handling personal tasks such as picking up his laundry, remembering the day of the week, and taking medication. (ECF 19 at 12; *see* AR 49-57). Relying

---

[6] Robb claims that although he has endured multiple head injuries throughout his life, the most significant injury occurred in 1980 from a train collision, impairing his memory. (*Id*. at 12).

in part on this testimony, and the ALJ's assigned RFC, Robb argues that "[t]here is no logical connection between Plaintiff's memory lapses and the notion that simple instructions will completely resolve them." (ECF 19 at 13 (citing *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019))). Robb also asserts that certain consultative examinations were improperly excluded from the ALJ's analysis, leading to an incorrect RFC (*id*. at 11, 18-21; *see also* AR 297-99, 303-05), and that "the evidence establishes memory lapses even when performing simple tasks" (*id*. at 13). The Court views the situation differently than Robb, and each argument will be addressed in turn.

1. Inclusion of Robb's Testimony in RFC

Robb bases his argument for a remand largely on his own testimony related to his closed head injury and associated memory deficiencies. (*See* ECF 19 at 11-25). The ALJ assigned some weight to Robb's own testimony regarding his memory issues, however, Robb was also asked to attend a consultative examination so that the ALJ could receive additional medical evidence of Robb's purported injuries. (AR 63-64). The ALJ stated on the record to Robb, with Robb's representative present, that "[i]f I decide that I need additional information, I will send you for a consultative examination. Okay? It's very important that if I do decide I need this, that you attend it. Okay?" (*Id*.).[7] Robb acknowledged the ALJ's request in the affirmative but failed to attend the requested examination. (*Id*.; *see* AR 29 ("[T]he medical evidence of record does not support his mental impairments at this point, and without him attending the consultative examination, there were no psychiatric records or evaluations pertaining to his allegations of poor memory during the period at issue."); *see also* AR 256-58).

---

[7] The ALJ scheduled a consultative exam for July 28, 2023, with notice dated July 13, 2023, from the Disability Determination Bureau (DBB) indicating that "we need more information about your condition" (AR 256) and that the appointment would be paid for by the DBB. (AR 256-58). Robb does not dispute receiving the notice but instead argues that missing the examination should not be held against him given his memory issues. (*See* ECF 19 at 22).

The ALJ was not required to accept Robb's testimony as undeniable proof that his alleged memory issues were as severe as he alleged. *See Anders v. Saul*, 860 F. App'x 428, 433 (7th Cir. 2021) ("[Claimant's] own testimony that elevating his legs eased his swelling, along with statements to his medical providers to that effect, did not compel the ALJ to afford greater weight to PA Million's opinion." (citations omitted)); *see also Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) ("[S]ubjective complaints are the opposite of objective medical evidence and, while relevant, do not compel the ALJ to accept [the claimant's] assessment." (citation omitted)); *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014). In this case the ALJ identified two state agency medical consultants, Randal Horton, Psy.D., and Ken Neville, Ph.D., who "found insufficient evidence to make a determination regarding any mental impairments." (AR 28; *see* AR 65-67, 72-76).

In that regard, "[t]he only evidence regarding mental health were remote, dating back to 2005 and 2012, over 10 years prior to the period under their review." (AR 28 (citations omitted)). And to reiterate, Robb failed to attend the consultative mental examination that the ALJ ordered, so there is no current consultative examination to support his allegation that he currently cannot work due to memory problems. (*Id.*); *see Matthew M. v. O'Malley*, No. 3:23-cv-50020, 2024 WL 1530393, at *8 (N.D. Ill. Apr. 9, 2024) ("A claimant has the principal duty to submit evidence relating to the disability claim." (citation omitted)). The ALJ also considered that more recent physical examinations "documented basically normal mental health findings, including psychological and neurological functioning." (AR 29; *see* AR 28 (summarizing medical records from providers from April 2020 to October 2022); *see also* AR 1290, 1293-94). The ALJ explained how the more recent medical records cut against Robb's subjective assertions, stating as follows:

> The only current records were from Cameron Memorial Community Hospital, where records showed that on April 7, 2020, he presented as a new patient who had suffered a traumatic brain injury and had multiple orthopedic injuries secondary to being hit by a train when he was young . . . . Examination showed he was oriented to person, place, and time, and the physical, and neurological examination were normal. Mental evaluation showed he had normal mood and affect. His behavior was normal and judgment and thought content was not changed.

(AR 28; *see* AR 1289-93). Consequently, the ALJ reasonably relied on medical evidence, as well as Robb's subjective complaints, in designing the RFC. *See Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994) ("In light of the previously discussed evidence, we find that the ALJ could conclude that Luna's pain was not severe enough to prevent him from performing sedentary work." (citation omitted)).

2. Inclusion of Consultative Examinations in RFC

Relatedly, Robb's overreliance on remote 2005 and 2012 medical records is fatal to his argument. A 2005 report from Kenneth Bundza, Ph.D., states that "significant [memory] deficits are noted across the board, with some variation regarding primarily the areas of storage and recall." (AR 298). A 2012 medical report from Candace L. Martin, Psy.D., states that "the objective measurement of his memory skills finds the claimant to be generally functioning overall in the borderline to low average ranges of memory skills." (AR 304). These reports are noteworthy, but a vast amount of time has passed since these reports were written, diminishing their relevancy. Therefore, it was reasonable for the ALJ to request an updated medical opinion. Yet, as previously discussed, Robb did not attend the consultative examination. (AR 29); *see Davenport v. Berryhill*, 721 F. App'x 524, 527 (7th Cir. 2018) ("Remarkably, [the claimant] faults the ALJ for failing to develop the administrative record, but . . . . [t]he evidence, or lack of it, supports the ALJ's conclusion . . . .").

What is more, there is a social security regulation directly on point, stating as follows:

8

> If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind.

20 CFR § 416.918(a).[8] Robb also fails the "good reason[,]" *id*. § 416.918(b), exception to this rule as he relies on his alleged memory issues for exemption. Robb told the ALJ that his friends assist him in preparing for appointments (AR 49), and he seemed to attend his blood pressure appointments as directed (*see, e.g.*, AR 1290, 1344, 1347, 1351). Further, this is not a case where the claimant is proceeding *pro se*; rather, Robb is represented by counsel and is presumed to have advanced his best case before the ALJ. *See Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) ("[B]ecause Summers was represented by counsel at the hearing, she is presumed to have made her best case before the ALJ." (citation omitted)). Therefore, the ALJ reasonably expected that Robb would attend the consultative examination. *See Davenport*, 721 F. App'x at 527 ("[Claimant's] refusal to submit to a medical examination was, as the ALJ noted, reason enough for him to deny her applications" (citations omitted)).

3. The ALJ's Accounting of Robb's Memory Issues in RFC

Relatedly, Robb also contends that the ALJ failed to explain how the RFC accommodates the demonstrated effects of his memory issues. (ECF 19 at 11).[9] Underpinning this argument,

---

[8] Good reasons for failure to appear include the following:

> (1) Illness on the date of the scheduled examination or test;
> (2) Not receiving timely notice of the scheduled examination or test, or receiving no notice at all;
> (3) Being furnished incorrect or incomplete information, or being given incorrect information about the physician involved or the time or place of the examination or test, or;
> (4) Having had death or serious illness occur in your immediate family.

20 C.F.R. § 416.918(b).

[9] Robb asserts that the "RFC only includes a limitation that Plaintiff can 'understand, remember, and carry out simple instructions . . . .'" (ECF 19 at 12 (quoting AR 25)).

Robb states the ALJ should have "included RFC limitations related to the frequency of Plaintiff's memory lapses, the effect a memory lapse would have on Plaintiff in the workplace, the best way to present information so Plaintiff recalls it, and the repetitiveness of the work tasks." (ECF 19 at 13). However, Robb failed to provide the ALJ with objective evidence that might require additional limitations in the RFC. *See Keandray B. v. Saul*, No. 1:19-CV-2592-JMS-DLP, 2020 WL 870016, at *5 (S.D. Ind. Feb. 21, 2020) ("The burden is on [the claimant] to produce the necessary evidence of disability and participate in the examinations necessary to inform the disability inquiry." (citation omitted)). Accordingly, "the Court does not fault the ALJ for the lack of evidence resulting from [Robb's] failure to attend the scheduled examination[]." *Id*. Instead, it appears reasonable that the ALJ used the record she was provided to arrive at her decision.

   In designing the RFC, the ALJ sensibly relied on several pieces of evidence, including Robb's own testimony that he could follow simple instructions to make small meals (AR 29; *see* AR 50), along with an October 26, 2022, medical opinion from Thomas Miller, MD, that Robb "appears to have no difficulty with attention or concentration . . . . Cognition and memory were normal." (AR 1192; *see* AR 29). And as previously stated, two state agency medical consultants found there were no mental medically determinable impairments established. (AR 28; *see* AR 65-67; AR 72-76). Considering these points wholistically, the ALJ's RFC, including Robb's limitation to simple instructions, was not unreasonable. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023) ("The ALJ considered some evidence that could have supported a more restrictive [RFC] than the ALJ found here, but other substantial evidence supports the ALJ's decision."); *see also Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) ("Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . this court will not

overturn an ALJ's credibility determination unless it is patently wrong." (alteration in original) (internal citation and quotation marks omitted)); *Matthew M. v. O'Malley*, No. 3:23-CV-50020, 2024 WL 1530393, at *6 (N.D. Ill. Apr. 9, 2024) ("Without pointing to any new and potentially decisive medical evidence that the ALJ improperly interpreted, Plaintiff has not shown that the ALJ's RFC determination is not supported by substantial evidence." (collecting cases)). Consequently, the Court will not interfere with the ALJ's decision.

    For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

    SO ORDERED.

    Entered this 4th day of August 2025.

                                                         /s/ Andrew L. Teel
                                                         Andrew L. Teel
                                                         United States Magistrate Judge